UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LIVE FACE ON WEB, LLC,

                    Plaintiff,

          - against -                     **MEMORANDUM AND ORDER**

BIBLIO HOLDINGS LLC, and                   15 Civ. 4848 (NRB)
MARJAN GHARAJEDAGHI,

                    Defendants.
------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        Plaintiff Live Face on Web, LLC ("LFOW") brings this action
alleging copyright infringement against defendants Biblio Holdings
LLC ("Biblio") and Marjan Gharajedaghi ("Gharajedaghi," and
collectively, "defendants").  According to LFOW, defendants have
infringed on LFOW's rights in its copyrighted software.  Defendants
have moved to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6).  For the reasons stated herein, the motion is granted in
part and denied in part.

                              **BACKGROUND**

I.   **Factual Background**

        The following facts are drawn from the Complaint (or "Compl.")
filed June 23, 2015, and are assumed to be true for purposes of
this motion.  LFOW is a Pennsylvania-based developer of "live
person" software (the "LFOW Software") that allows companies to
display a video of a "walking" and "talking" personal host to

welcome online visitors to a website.  Compl. ¶¶ 1, 9-10.  The host serves as an online spokesperson for the company: the host typically explains the company's products or services and directs a visitor's attention to a particular product or aspect of the website.  Id. ¶ 10.  Companies using the LFOW Software can customize its settings to, for example, manipulate the positioning of the spokesperson on the website or guide internet users to predetermined webpages.  Id. ¶ 11.  LFOW registered a copyright in LFOW Software version 7.0 in December 2007.  Id. ¶ 18; see Compl., Ex. A (Certificate of Registration).  LFOW licenses the LFOW Software to customers for a license fee.  Compl. ¶ 16.

An LFOW customer implements the LFOW Software by embedding an HTML script tag in the HTML code of its website.  Id. ¶ 13.  The added code links the website to a copy of the LFOW Software; the copy may be stored on the same server as the customer's website or on a different server.  Id.  When a web browser is directed to a webpage linked to the LFOW Software, the embedded HTML script tag is read by the browser, resulting in the distribution of the LFOW Software.  The browser automatically saves the LFOW Software into cache or a hard drive or both, and automatically loads the LFOW Software into computer RAM.  Id. ¶ 14.  As a result, the specific spokesperson video is launched and displayed on the webpage.  Id.

Biblio is a New York company with its principal place of business in Manhattan, and Gharajedaghi is the company's "owner

and/or president." Id. ¶¶ 2-3. Defendants "own, and/or operate and/or control" "www.biblionasium.com" (the "Website"). Id. ¶ 19. LFOW alleges, upon information and belief, that defendants have used an infringing version of the LFOW Software to display a spokesperson video on the Website. Id. ¶¶ 21-22. Specifically, defendants included code on the Website to link it to "http://tweople.com/client/multi_new.js.php?id=129"; that website itself links to the file "playerbase-multi.js," which file is an allegedly infringing reproduction of LFOW's copyrighted code. The file is stored for defendants on the "webserver(s) for tweople.com." Id. ¶¶ 24-25. According to LFOW, when a user's browser retrieves a webpage from the Website, a copy of the infringing software is "stored on the visitor's computer in cache, memory and/or its hard drive." Id. ¶ 26.

The spokesperson video that launches on the Website "advertises and promotes the products and/or services of Defendants, encouraging the website viewer to purchase and/or use Defendants' products and/or services." Id. ¶ 28. According to LFOW, just as its own software does, the infringing software captures and prolongs the attention of the average online visitor, thereby enhancing the ability of the Website to promote and sell its products and providing a "direct positive impact on sales and/or the brand, public image and reputation" of Biblio. Id. ¶¶ 30, 12. "[U]pon information and belief," the use of the

"infringing version of the LFOW Software by Defendants did in fact generate revenues and profits for Defendants." <u>Id</u>. ¶ 31.

## II.  <u>Procedural History</u>

LFOW brought this action in June 2015.  The one count in the Complaint alleges that defendants are liable for direct, indirect, and vicarious infringement of LFOW's copyright.  Defendants now move to dismiss the Complaint pursuant to Rule 12(b)(6).

Defendants' motion largely relies on an affidavit submitted by defendant Gharajedaghi (or "Gharajedaghi Aff."). Gharajedaghi states, <u>inter alia</u>, that the Website is a "free educational website" that serves as an "online book club" for children (and their parents and teachers) to rate, review, and recommend books to other children; that defendants operate the Website from home with the assistance of a remote web developer; and that although defendants have partnerships with publishers, the Website's operating costs exceed its revenue.  Gharajedaghi Aff. ¶¶ 1-6.  On the subject of the allegedly infringing software, she states that "Defendants, in good faith, paid the company 'Tweople' for hosting and playing a video on [the Website] to welcome visitors," and that Tweople had sent defendants marketing materials claiming exclusive rights to its video technology.  <u>Id</u>. ¶¶ 9, 13.  After defendants produced a video and sent it to Tweople, Tweople's staff had defendants add code to the Website to provide access to the video player; nevertheless, the video only ran on the Website for

a few weeks.  Id. ¶¶ 10-12, 19.

For the most part, the facts set forth in this affidavit are outside the Complaint and cannot be considered at the motion to dismiss stage.  However, as discussed below, the role of "Tweople" may be significant in determining defendants' ultimate liability. Moreover, if proven, defendants' good-faith reliance on Tweople may be relevant to any potential damages award.  See 17 U.S.C. § 504(c)(2) (court may reduce statutory damages to $200 for all infringements in the action with respect to one work if infringer proves that it was not aware and had no reason to believe that its acts constituted infringement).

## DISCUSSION

### I.  <u>Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the supporting factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Where a plaintiff has failed to "nudge[]" a claim "across the line from conceivable to plausible," a district court must dismiss the complaint. <u>Twombly</u>, 550 U.S. at 570.  Courts must accept as true all well-pleaded factual allegations in a complaint and "draw[] all

inferences in the plaintiff's favor." <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks omitted).  Yet courts are "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable LLC</u>, 622 F.3d 104, 111 (2d Cir. 2010).  The Court may also consider a document where the complaint relied heavily upon its terms and effect so as to make it "integral" to the complaint.  <u>Id</u>.

## II.  <u>Copyright Claims</u>

### A.  Direct Infringement

As defined by the Copyright Act (the "Act"), "[a] 'computer program' is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result."  17 U.S.C. § 101.  "[C]opyright protection of a computer program is principally derived from treating the underlying source code as a literary work."  <u>Miller v. Facebook, Inc.</u>, No. C 10-00264 WHA, 2010 WL 2198204, at *4 (N.D. Cal. May 28, 2010).

Section 106 of the Act gives copyright owners the "exclusive rights, among other things, to reproduce a copyrighted work, to

prepare derivative works, to distribute copies of the work to the public, and to display the work publicly." Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 430 (2d Cir. 2012). "In order to demonstrate copyright infringement, a plaintiff must show ownership of a valid copyright and copying of the protectable elements of the copyrighted work." Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012). A certificate of copyright registration is prima facie evidence of ownership of a valid copyright, although that presumption is rebuttable. Id. "Copying" is "shorthand for the infringing of any of the copyright owner's five exclusive rights described in § 106." Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (internal quotation marks omitted). A plaintiff need not show that the infringement was done knowingly or intentionally. See, e.g., Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1113 (2d Cir. 1986).

Although LFOW attached to the Complaint a certificate of copyright registration for LFOW Software version 7.0, it is "Defendants' firm position . . . that Plaintiff's asserted copyright is not even valid," Defendants' Memorandum in Support of Motion to Dismiss the Complaint at 11. To attempt to rebut the presumptive validity of LFOW's copyright, defendants submit a declaration apparently submitted by a nonparty in connection with a motion for consolidation and transfer before the United States

Judicial Panel on Multidistrict Litigation.  <u>See</u> ECF. No. 20-2.
We cannot consider this declaration filed in another court "for
the truth of the matters asserted in the other litigation." <u>Global</u>
<u>Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 157 (2d
Cir. 2006) (internal quotation marks omitted).  At this stage,
defendants fail to rebut the presumption of LFOW's ownership of a
valid copyright in the LFOW Software.

Defendants raise a number of issues related to LFOW's
allegations of "copying."  In order to constitute a copy under the
Act, a "work must be embodied in a medium, i.e., placed in a medium
such that it can be perceived, reproduced, etc., from that medium
. . . [,] and it must remain thus embodied 'for a period of more
than transitory duration.'" <u>Cartoon Network LP v. CSC Holdings,</u>
<u>Inc.</u>, 536 F.3d 121, 127 (2d Cir. 2008) ("<u>Cartoon Network</u>") (quoting
17 U.S.C. § 101).  Distribution of unauthorized reproductions of
copyrighted work constitutes direct infringement.  <u>See</u>, <u>e.g.</u>,
<u>Island Software & Computer Serv., Inc. v. Microsoft Corp.</u>, 413
F.3d 257, 261 (2d Cir. 2005); <u>Ortiz-Gonzalez v. Fonovisa</u>, 277 F.3d
59, 62 (1st Cir. 2002).  LFOW alleges that as a result of
defendants' modification to the Website, an infringing copy of the
LFOW Software is distributed to visitors accessing the Website.

Defendants' most promising response is that any infringing
distribution was done by Tweople.  This argument appears to be
supported by the Complaint.  LFOW alleges that defendants added

code to the Website that linked it to a third-party website
("http://tweople.com/client/multi_new.js.php?id=129"); and that
the third-party website itself linked to the infringing file hosted
on the "tweople.com" server.  Compl. ¶¶ 24-25.  The added code
allegedly resulted in distribution of copies of the LFOW Software
to Website visitors.  Id. ¶ 26.  In other words, the Complaint
indicates that the third-party server stored and disseminated the
infringing file directly to Website visitors.

As LFOW points out, defendants fail to provide legal authority
for their argument that adding code linking to infringing copies
hosted and disseminated by a third party does not constitute direct
infringement.  Nevertheless, such authority may exist.  In Perfect
10, Inc. v. Amazon.com, Inc., Perfect 10 alleged that Google,
through its image search service, infringed on Perfect 10's rights
in its copyrighted photographs.  508 F.3d 1146 (9th Cir. 2007)
("Perfect 10").  In relevant part, Perfect 10 argued that Google's
"in-line linking" to copies of Perfect 10's images that were hosted
without authorization on third-party websites infringed its
display and its distribution rights.  "In-line linking" referred
to Google's provision on its image-search results webpage of HTML
instructions that directed users' browsers to access the third-
party computer that actually stored the infringing image and to
then download the image and incorporate it into a window on users'
computer screens.  Id. at 1155-56.

The Ninth Circuit rejected Perfect 10's argument that Google displayed or distributed infringing copies through this so-called "framing" of the in-line-linked images.  With respect to the distribution right, the court explained that although "Google's search engine communicate[d] HTML instructions that t[old] a user's browser where to find full-size images on a website publisher's computer . . . [,] Google d[id] not itself distribute copies of the infringing photographs." Id. at 1162.  Instead, it was the "website publisher's computer that distribute[d] copies of the images by transmitting the photographic image electronically to the user's computer." Id.  As Google did not actually disseminate copies of the images, it did not violate Perfect 10's distribution rights. Id.

Similarly, in MyPlayCity, Inc. v. Conduit Ltd., MyPlayCity, Inc. ("MPC"), an internet-based video game company, alleged infringement by Conduit Ltd. ("Conduit"), which sold content providers the right to use its online platform to create customizable "toolbars" for browsers. No. 10 Civ. 1615 (CM), 2012 WL 1107648, at *2 (S.D.N.Y. Mar. 30) ("MPC"), adhered to on reconsideration, No. 10 Civ. 1615 (CM), 2012 WL 2929392 (S.D.N.Y. July 18, 2012).  When an internet user downloaded the toolbar, it was installed in that user's web browser, allowing the user to access a publisher's content--in this case, MPC's games. Id.  MPC argued that Conduit infringed on its distribution rights when,

after the termination of agreements between the two parties, Conduit continued to distribute toolbars which provided unlimited access to MPC's copyrighted games. The court rejected MPC's infringement argument: "Because the actual transfer of a file between computers must occur, merely providing a 'link' to a site containing copyrighted material does not constitute direct infringement of a holder's distribution right." Id. at *12.  As it was undisputed that the toolbars did not contain copies of MPC's copyrighted software and that the software resided on MPC's servers, "it was MPC's servers that 'actually disseminated' the copies of MPC's copyrighted games" and Conduit could not be held liable for infringing MPC's distribution rights.  Id. at *13-14.

Whether applicable directly or by analogy, the reasoning of these cases appears to limit LFOW's ability to hold defendants liable for direct infringement of LFOW's distribution right. Nevertheless, as this subject was hardly briefed and the decisions in Perfect 10 and MPC had the benefit of factual development, we will permit discovery on the relationship between Tweople and the distribution of the allegedly infringing software.

Defendants' other arguments are without merit.  Relying on the affidavit of Gharajedaghi, defendants assert that the infringing software was never downloaded, used, or sold to Website visitors, and that there is no need to distribute software to play the spokesperson video.  In the Complaint, however, LFOW alleges

11

that the infringing software was automatically saved into the cache or hard drives and automatically loaded into computer memory or RAM of Website visitors, resulting in the display of the spokesperson video on their computer screens. Accordingly, the Complaint alleges actual dissemination of the infringing software (although, as discussed above, perhaps not by defendants), and those allegations govern at this stage. Similarly, Gharajedaghi states that because the Website visitors were mostly students using iPads, devices Tweople's program did not serve, defendants decided to turn off the video player after a few weeks of struggling to make it work. Gharajedaghi Aff. ¶¶ 17-20. If true, this fact may bear on any ultimate findings of liability and damages, but the Complaint alleges that defendants used the spokesperson video on their Website, see Compl. ¶¶ 21-22, 26.

Defendants also argue that any storage of the infringing software on internet users' systems was only for a "transitory duration," Cartoon Network, 536 F.3d at 129. That argument questions whether the software's embodiment in the computers of users visiting the Website was sufficiently "fixed" so as to create a copy. See id. For purposes of its direct infringement claim, however, LFOW alleges that defendants distributed an already-existing reproduction of the LFOW Software hosted on a third-party server. Defendants do not argue that the software's embodiment on the server is insufficiently "fixed" within the meaning of the

Act.  Moreover, to the extent that the duration of storage on
users' systems is relevant, it presents an issue of fact.  See id.
at 128 ("[L]oading a program into a computer's RAM can result in
copying that program" as long as the program is embodied in RAM
for more than a "transitory duration" (emphasis in original)).

We also reject defendants' argument that their Website is
protected under the "safe harbor" provisions of the Digital
Millennium Copyright Act.  17 U.S.C. § 512.  "While a complaint
can be dismissed for failure to state a claim pursuant to a Rule
12(b)(6) motion raising an affirmative defense if the defense
appears on the face of the complaint, the complaint itself must
establish the facts necessary to sustain defendant's defense."
BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d
342, 358 (S.D.N.Y. 2014) ("BWP") (internal quotation marks
omitted).  To receive the benefit of the DMCA safe harbor,
defendants must first qualify as a "service provider" and satisfy
the "conditions for eligibility" described in 17 U.S.C. § 512(i),
which, among other things, require adoption and implementation of
a "repeat infringer[]" policy, id. § 512(i)(1)(A).  Defendants'
satisfaction of these threshold requirements is not clear from the
Complaint, and defendants' briefs do not address them at all.  See
BWP, 69 F. Supp. 3d at 358 ("At the complaint stage, there are
insufficient facts to demonstrate that the Defendants named in
this action satisfy even the threshold requirements.").

Defendants' bare contention that the Complaint alleges only "de minimis" infringement fares no better.  Relying on what appears to be a screenshot of LFOW's website, defendants argue that any infringement is not actionable because LFOW's losses are limited to its advertised license fee of approximately $400.  Again, we cannot consider this document at this stage.  Nor does the amount of the unpaid license fee suggest that any proven infringement would be "a technical violation of a right so trivial that the law will not impose legal consequences," Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 74 (2d Cir. 1997); see On Davis v. The Gap, Inc., 246 F.3d 152, 173 (2d Cir. 2001) (providing examples of trivial copying such as copying "cartoon to post on the refrigerator" and waiters singing "Happy Birthday" at a restaurant).  To the extent that defendants are arguing that the alleged copying of LFOW's source code "fall[s] below the quantitative threshold of substantial similarity," so as not to constitute infringement, Ringgold, 126 F.3d at 74, LFOW has submitted both its registered source code and the allegedly infringing code, and defendants' cursory invocation of the de minimis doctrine provides no basis to conclude, prior to any discovery, that the two are not "substantially similar" as a matter of law, cf. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 65 (2d Cir. 2010) (acknowledging "certain instances of alleged copyright infringement where the question of

14

substantial similarity cannot be addressed without the aid of discovery or expert testimony").

Finally, based on the "one satisfaction rule," defendants argue that LFOW cannot bring this action because it has already sued Tweople elsewhere. That rule generally "provides that a plaintiff is entitled to only one satisfaction for a single injury, such that amounts received in settlement from an alleged tortfeasor are credited against judgments for the same injury against non-settling tortfeasors." BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271, 1276 (11th Cir. 2008). Defendants cite no authority for their contention that a settlement with Tweople would bar claims against any alleged joint tortfeasors, rather than potentially reducing any recovery against such tortfeasors. Cf. McDermott, Inc. v. AmClyde, 511 U.S. 202, 218 (1994) (noting that strict version of "one satisfaction rule" that barred plaintiff from litigating against one joint tortfeasor, having settled with and released another, had been "thoroughly repudiated"). Furthermore, even assuming that the strict one satisfaction rule applied here, there is no indication that any judgment against Tweople has been entered or satisfied, nor has either party brought to the Court's attention any settlement with Tweople.[1] See H. M.

---

[1] LFOW sued Tweople in the Middle District of Florida in January 2014. See Live Face on Web, LLC v. Tweople, Inc., No. 14-cv-0044-ACC-TBS (M.D. Fla.). In January 2015, Tweople filed a petition for relief under Chapter 7 of the

Kolbe Co. v. Shaff, 240 F. Supp. 588, 590 (S.D.N.Y.) ("The fact that one joint tort-feasor has been sued and a judgment rendered does not bar the suit against the remaining joint tort-feasors where the judgment is unsatisfied."), aff'd in part, 352 F.2d 285 (2d Cir. 1965).

Accordingly, defendants' motion to dismiss is denied as to the direct infringement claim.

## B. Contributory Infringement

To bring a claim for contributory infringement, a plaintiff must allege both that its copyrighted work was directly infringed and that "the defendant[,] with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another." Lefkowitz v. John Wiley & Sons, Inc., No. 13 Civ. 6414 (KPF), 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014) (internal quotation marks omitted); see Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement . . . ."). LFOW alleges that defendants "intentionally induced and/or encouraged direct infringement . . . by distributing the infringing version of the LFOW Software via their website(s) and/or seeking out the LFOW Software in order to use it on their website(s)." Compl. ¶ 48.

---

Bankruptcy Code. See Suggestion of Bankruptcy, Live Face on Web, LLC v. Tweople, Inc., No. 14-cv-0044-ACC-TBS (M.D. Fla. Jan. 22, 2015), ECF No. 285.

As defendants argue, this allegation states only a bare legal conclusion unentitled to any presumption of truth, see Iqbal, 556 U.S. at 678.   Nothing else in the Complaint suggests that defendants knew or had reason to know that they were using an infringing version of the LFOW Software.   LFOW does not argue otherwise in its brief.   The motion to dismiss is granted with respect to LFOW's contributory infringement claim.

## C. Vicarious Infringement

Liability may be imposed where a "defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." Grokster, 545 U.S. at 930 n.9.   Defendants may thus be held "vicariously liable for infringement where the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials— even in the absence of actual knowledge that the copyright monopoly is being impaired." BWP, 69 F. Supp. 3d at 357 (internal quotation marks omitted).   The Complaint is unclear as to what conduct constitutes the direct infringement for which defendants are vicariously liable.   However, drawing all inferences in LFOW's favor, it is reasonable to assume that vicarious infringement is pled in the alternative to direct infringement.   That is, if defendants did not distribute the copied software, then a third-party--presumably Tweople--did, and defendants are alleged to be

vicariously liable for that infringement.

Framed in this manner, the Complaint states a claim for vicarious infringement. LFOW alleges that defendants have "the right and ability to modify their own website or to have their website modified on [their] behalf," and that they did modify the Website to include code linking to the infringing software. Compl. ¶¶ 23-25. Defendants thus plausibly controlled the allegedly unlawful distribution of copies of LFOW Software to Website visitors.[2] Cf. Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996) (swap meet operator could control a vendor's sale of pirated goods because operator could exclude vendor from swap meet, thereby putting immediate end to infringing sales taking place at swap meet); BWP, 69 F. Supp. 3d at 357 (sufficient that complaint alleged that defendants maintained right of full control over websites, had sole discretion to refuse or remove content on websites, and possessed simple measures to prevent infringement). LFOW also alleges that defendants profit from and have a direct financial interest in the infringement because use of the infringing software allows them to "captur[e],

---

[2] Although defendants argue that they were not in a position to control Tweople's directly infringing activity as they were merely Tweople's customer, the Complaint does not contain any allegations concerning Tweople's direct infringement other than the suggestion that Tweople hosted and distributed the infringing software to visitors to defendants' Website. The Complaint sufficiently pleads that defendants had control over this alleged violation of LFOW's distribution right.

hold[] and prolong[] the attention of the average online visitor,"
and "upon information and belief," this use "did in fact generate
revenues and profits" for defendants.  Compl. ¶¶ 30-31.  Given the
alleged nature of LFOW's spokesperson software, it is plausible
that defendants' use of an infringing version resulted in increased
user interaction and web traffic, with attendant monetary
benefits.  See Arista Records, Inc. v. MP3Board, Inc., No. 00 CIV.
4660 (SHS), 2002 WL 1997918, at *11 (S.D.N.Y. Aug. 29, 2002)
("Infringement which increases a defendant's user base or
otherwise acts as a draw for customers constitutes a direct
financial interest."); see generally Ellison v. Robertson, 357
F.3d 1072, 1079 (9th Cir. 2004) ("The essential aspect of the
'direct financial benefit' inquiry is whether there is a causal
relationship between the infringing activity and any financial
benefit a defendant reaps, regardless of how substantial the
benefit is in proportion to a defendant's overall profits."
(emphasis omitted)).

     Accordingly, the motion to dismiss is denied as to the
vicarious infringement claim.

### III. **Personal Liability**

     Defendants contend that defendant Gharajedaghi cannot be held
personally liable because there are no allegations that she
intentionally infringed LFOW's copyright.  Furthermore, defendants
argue, her ownership of Biblio is insufficient to hold her

personally liable.   "It is well-settled that 'all persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.'" Fischer v. Forrest, No. 14 Civ. 1304 (PAE), 2015 WL 195822, at *4 (S.D.N.Y. Jan. 13, 2015) (brackets omitted) (quoting Sygma Photo News, Inc. v. High Soc'y Magazine, Inc., 778 F.2d 89, 92 (2d Cir. 1985)); see Lechner v. Marco-Domo Internationales Interieur GmbH, No. 03 Civ. 5664 (JGK), 2005 WL 612814, at *6 (S.D.N.Y. Mar. 14, 2005) ("[C]orporate officers can be held liable for the infringing acts of their corporations if they personally participated in the acts constituting infringement.").

LFOW alleges that Gharajedaghi is the owner or president of Biblio, see Compl. ¶ 3, and LFOW sufficiently alleges her participation in the claimed infringing activities, see id. ¶¶ 19-26 (both defendants operate Website, caused Website to use infringing version of LFOW Software, and added, or controlled process of adding, code linking to infringing software).  Indeed, Gharajedaghi's affidavit confirms her participation in the allegedly infringing activity.  See Gharajedaghi Aff. ¶¶ 1, 4, 9, 11-12 (stating that Gharajedaghi is owner of Biblio, that "Defendants" operate the Website from home with assistance of a remote web developer, and that Tweople's staff had "Defendants" add link to code to provide access to video player).

Accordingly, the motion to dismiss is denied with respect to defendant Gharajedaghi's liability.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. The Clerk of the Court is directed to terminate the motion pending at ECF No. 18. Defendants shall answer the Complaint within 14 days of today's date and the parties shall submit a proposed scheduling order within 35 days of today's date.

**SO ORDERED.**

Dated:    New York, New York
          September  _12_ , 2016

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE